**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHESTLEY TURNER, STEPHANIE MCCRAINIE and TURNER EXPRESS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.    21 CV 05867 |
| GAC STAR QUALITY, INC.  and GRIGORE CECATI, | ) ) ) | Hon. Jorge L. Alonso |
| Defendants. | ) ) | |

<u>**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

Now come Defendants, GAC STAR QUALITY, INC. and GRIGORE CECATI, by and through their attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6) (West 2022), and respectfully move this Honorable Court to enter an order dismissing Plaintiffs, CHESTLEY TURNER, STEPHANIE MCCRAINIE and TURNER EXPRESS, LLC's Second Amended Complaint, and in support thereof, state as follows:

<u>**INTRODUCTION**</u>

The underlying diversity action is before the Court on Plaintiffs' five count Second Amended Complaint ("SAC") against Defendants arising from mechanical work that was performed on a Peterbilt Truck.  Count I of the SAC attempts to plead a cause for violation of the Illinois Automotive Repair Act, Count II attempts to set forth a claim for negligence, Count III attempts to plead a claim for breach of implied warranty of workmanlike performance, Count IV attempts to plead a claim for negligent misrepresentation, and Count V attempts to plead a claim for violation of the Illinois Consumer Fraud Act.  All five Counts, however, are legally and factually defective, and must be dismissed.  Count I fails because there is no private right of

action for a violation of the Illinois Automotive Repair Act. Count II fails because pursuant to the *Moorman* doctrine, Plaintiffs cannot seek recovery of purely economic damages in tort. County III fails because Illinois law does not recognize a claim for breach of implied warranty of workmanlike performance for the provision of the services at issue in this matter. Count IV fails for the same reason Count II fails because, pursuant to the *Moorman* doctrine, Plaintiffs cannot seek recovery of purely economic damages in tort and Defendants were not in the business of supplying information. Finally, Count V fails because Plaintiffs cannot transform a garden variety breach of contract claim into a fraud claim.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Katz-Crank v. Haskett*, 843 F. 3d 641, 646 (7th Cir. 2016) *quoting Twombly, supra*. Detailed factual allegations are not required, but a plaintiff's complaint may not merely state an unadorned, the defendant unlawfully harmed me accusation. *Iqbal*, 556 U.S. at 678. Thus, a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) *citing Swanson v. Citibank, N.A.*, 614 F. 3d 400, 403 (7th Cir. 2010). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 557. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, not when the

plaintiff only raises a sheer possibility that the defendant has acted unlawfully. *Id. quoting Twombly*, 550 U.S. at 556. In evaluating a motion to dismiss, all facts in the complaint are accepted as true, but the Court is not required to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## I.     ILLINOIS DOES NOT RECOGNIZE A PRIVATE RIGHT OF ACTION UNDER THE AUTOMOTIVE REPAIR ACT.

The allegations of Count I of the SAC attempt to make a claim for violation of the Illinois Automotive Repair Act. The Automotive Repair Act, however, does not confer a private right of action, nor can one be implied from the statute. *Jandeska v. Prairie Intern. Trucks, Inc.*, 383 Ill. App. 3d 396, 400 (4th Dist. 2008). Illinois Courts have held that a private right of action is not necessary to provide an adequate remedy for violation of the statute because section 85 of the Automotive Repair Act provides penalties for violations. *Id. citing* 815 ILCS 306/85. Consistent with Illinois law, Federal District Courts have also held that the Automotive Repair Act does not confer a private right of action. *See Guyton v. Mitchell*, 2012 WL 5423584 (C.D. Ill. November 6, 2012) (holding that there is no private right of action, express or implied, in the Illinois Automotive Repair Act.); *see also Patel v. Zillow*, 2017 WL 3620812 (N.D. Ill. August 23, 2017) and *Sparks v. City of Peoria, Ill.*, 2009 WL 3764032 (C.D. Ill. November 10, 2009) (both citing to *Jandeska*, 383 Ill. App. 3d at 400 for the holding that the Automotive Repair Act does not provide a private right of action). Because the Automotive Repair Act does not provide a private right of action, Count I of Plaintiffs' SAC fails and must be dismissed.

## II.    PLAINTIFFS' CLAIM FOR NEGLIGENCE FAILS.

### A.     PLAINTIFFS CANNOT STATE A CLAIM FOR NEGLIGENCE BASED UPON CONTRACTUAL OBLIGATIONS.

To state a claim for negligence under Illinois law, a plaintiff must plead that the

defendant owed plaintiff a duty, it breached that duty, and the breach proximately caused plaintiff's injury. *See Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 14. When a relationship is governed by contract and there is no other relationship between the parties, "the defendant owes a plaintiff no duty other than that created by the contract." *Pick Fisheries, Inc. v. Burns Electronic Sec. Services, Inc.*, 35 Ill. App. 3d 467, 471 (1st Dist. 1976). In *Endencia v. ADT Security Services, Inc.*, 2008 WL 4833111 (N.D. Ill. Oct. 28, 2008), the plaintiff had contracted with ADT to monitor the burglar alarm at her veterinary clinic and brought a negligence claim against ADT after she allegedly discovered that the clinic had been vandalized yet ADT had never detected a security breach. *Id. at* *1. The court granted ADT's motion to dismiss plaintiff's negligence claim because there were no allegations suggesting that the claim was based on anything other than the parties' contractual relationship or that ADT had any duty to plaintiff that was independent of the contract. *Id.* at *2 (*citing Pick Fisheries, Inc.*, 35 Ill. App. 3d at 471 (where "without the contract[ ] there would be no relationship between the parties," the nature of the duty must be determined by reference to the contract)).

Like the complaint in *Endencia*, the SAC in the case at bar fails to plausibly allege any independent tort duty. The SAC alleges an oral agreement between Plaintiffs and Defendants in which the Defendants would perform certain repairs to Plaintiffs' Peterbilt truck. *See* SAC, ¶s 19-29. There are no allegations in the SAC, even when making reasonable inferences in Plaintiffs' favor, that would suggest that they are basing their negligence claim on a relationship other than their contractual relationship with Defendants. Thus, Plaintiffs have not shown that Defendants owed them an independent tort duty that could support a negligence claim. *See Hollywood Trucking, Inc. v. Watters*, 2008 WL 4277596, at *3 (5th Dist. 2008) (stating that for a

negligence claim "[t]he existence of a duty is a question of law to be determined by the court"). As a result the claim for negligence fails and must be dismissed.

### B.   THE *MOORMAN* DOCTRINE PRECLUDES PLAINTIFFS' CLAIM FOR NEGLIGENCE.

In Illinois, solely economic losses are generally not recoverable in tort actions. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 91 (1982). The economic loss doctrine adopted by the Illinois Supreme Court in *Moorman* bars a plaintiff from recovering in negligence for losses which are purely economic, which do not involve personal injury or property damage. *Id.* The Illinois Supreme Court reasoned that tort law is not intended to compensate parties for monetary losses suffered as a result of duties which are owed to them simply as a result of a contract. Losses related to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental causes lie in contract. *Id.* 91 Ill. 2d at 86. In *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146 (1986), the Illinois Supreme Court applied the economic loss rule to claims that services were performed negligently and held that "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." 115 Ill. 2d at 153.

The economic loss rule applies even to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event. *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 177-78 (1982) (and authorities cited therein); *Moorman*, 91 Ill. 2d at 86. For damages to be recoverable in tort, the sudden, dangerous, or calamitous occurrence must still result in personal injury or property damage. Absent injury to a plaintiff's

person or property, a claim presents an economic loss not recoverable in tort. *See Northern Illinois Gas Co. v. Vincent DiVito Construction*, 214 Ill. App. 3d 203, 218-19 (2d Dist. 1991).

In Count II of the SAC, Plaintiffs allege that Defendants made negligent repairs to Plaintiffs' Peterbilt truck, which resulted in damages. *See* SAC, ¶s 205-213. The SAC, however, contains no allegations of a sudden, dangerous or calamitous event. The damages complained of by Plaintiffs were not the result of a dangerous event, but rather, the result of disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, which are not recoverable in tort. *Redarowicz*, 92 Ill. 2d at 177-78.

It is apparent that the property damage alleged by Plaintiffs is nothing more than damage incidental to the repairs made to the Peterbilt truck. *See* SAC, ¶s 205-213. Illinois Courts, however, have held that damage "consequent to the qualitative defects," is not recoverable in tort. *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 150 Ill. App. 3d 681, 686-87 (1st Dist. 1986) (plaintiffs' alleged property damage to insulation, walls, ceiling, floors and electrical outlets was incidental to the defective windows and doors and was damage consequent to the qualitative defects and not recoverable in tort). The gravamen of the allegations of the SAC in the case at bar is that Defendants' repairs to the Peterbilt truck were inadequate or deficient, which caused them economic loss. The Plaintiffs' purported economic damages lack "any claim of personal injury or damage to other property * * * ' [citation]," they cannot be recovered under a negligence theory. *Moorman*, 91 Ill. 2d at 82.

## III. ILLINOIS DOES NOT RECOGNIZE A BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE FOR THE SERVICES AT ISSUE.

Certain types of common law implied warranties are recognized in Illinois. A review of Illinois cases reveals that such warranties are limited to two types of situations: an implied warranty of habitability applicable to residences (*see*, e.g., *Naiditich v. Shaf Home Builders, Inc.*,

160 Ill. App. 3d 245, 264 (2d Dist. 1987); and an implied warranty of workmanlike construction in the case of construction contracts (see, e.g., *Harmon v. Dawson*, 175 Ill. App. 3d 846, 849 (4th Dist. 1988)). Other than these two strictly defined circumstances, the recognition of implied warranties has been limited to the sale of goods, not services. *Dunlap v. The First National Bank of Danville*, 76 F. Supp. 948, 961 (C.D. Ill. December 15, 1999) citing *American Lablemark Company v. Akiyama Corp. of America*, 1993 WL 460838 (N.D. Ill. November 5, 1993); *Allstate Indemnity Company v. ADT LLC, d/b/a ADT Security Services*, 110 F. Supp. 3d 856, 864 (N.D. Ill. June 17, 2015).

In the case at bar, the allegations of the SAC relate to mechanic services performed by Defendants to a Peterbilt truck, not the sale of goods. *See* SAC, ¶s 215-225. There is no recognized implied warranty of workmanlike performance, however, for mechanic services. As a result, Plaintiffs' claim for breach of implied warranty of workmanlike performance fails.

## IV. PLAINTIFFS' CLAIM FOR NEGLIGENT MISREPRESENTATION FAILS BECAUSE DEFENDANTS ARE NOT IN THE BUSINESS OF SUPPLYING INFORMATION.

The *Moorman* doctrine prohibits Plaintiffs from recovering under a negligence theory for purely economic damages. *Moorman,* 91 Ill. 2d at 81. There is no dispute that the SAC is only seeking economic damages. *See* SAC, ¶s 114-141. Illinois law recognizes an exception to the *Moorman* doctrine, known as the information provider exception, only for plaintiffs whose damages were caused by negligent misrepresentations "by a defendant in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 333-34 (2006). The key inquiry in determining whether the information provider exception to the *Moorman* doctrine applies "is whether the defendant is in the business of supplying information for the guidance of others, or

whether the information that is supplied is merely ancillary" to the ultimate work product. *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 168-69 (1997). The exception does not apply when the information "supplied is merely ancillary to the sale [of a product or service] or in connection with the sale." *Id.*, 176 Ill. 2d at 168. .

To state a claim based on the negligent misrepresentation exception to *Moorman* plaintiff must demonstrate that: (1) defendant is in the business of supplying information for the guidance of others in their business dealings; (2) defendant provided information that constitutes a misrepresentation; and (3) defendant supplied the information for guidance in the plaintiff's business dealings. *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 27 (1st Dist. 1999); *Nicholas J. Murlas Trust v. Mobil Oil Corp.*, 1995 WL 505468, at * 13 (N.D. Ill. August 18, 1995). The Illinois Supreme Court's test for determining whether a defendant 'is in the business of supplying information for the guidance of others in their business transactions' is whether the end product of the relationship between plaintiff is a tangible object which could be readily described in a contract (*i.e.,* a product or a service performed upon a tangible thing) or whether it is intangible. *Fireman's Fund. Ins. Co.*, 176 Ill. 2d at 168-69. In short, if the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, or to perform a service upon a tangible thing then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception. *MW Manufacturers, Inc. v. Friedman Corp.*, 1998 WL 417501, at *4 (N.D. Ill. July 21, 1998). Thus, when the information offered by the defendant relates to the defendant's tangible goods and/or noninformational goods or services, the information is considered merely ancillary or incidental, and the defendant is not deemed to be in the business of providing information and is not liable

for negligent misrepresentation. *Tolan & Son, Inc.*, 308 Ill. App. 3d at 29, *citing General Electric Capital Corp.,* 797 F. Supp. at 1442.

The Illinois Appellate Court has observed that it may be useful to "envision a continuum [of enterprises] with pure information providers at one end and pure tangible good providers at the other." *Tolan and Son, Inc.*, 308 Ill. App. 3d at 28. At the pure information end are examples such as accountants, attorneys, insurance brokers, stockbrokers, real estate brokers, termite inspectors, and environmental assessors. *Id.* (collecting cases). With pure information providers, the product is information itself. *Id.* "In other words, the end product is the ideas, not the documents or other objects into which the ideas are incorporated." *Id. citing Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 163 (1994). Examples of entities at the tangible product end of the continuum include manufacturers of computers and software, among other products, and sellers of crop sprayers. *Id.* (collecting cases). With tangible product providers, "while the entity may exchange information, the information relates only to the goods or services, and thus, is 'supplied incidental to the sale of the product.'" *Id. citing Gen. Elec. Capital, Corp. v. Equifax Servs.*, 797 F. Supp. 1432, 1442 (N.D. Ill. 1992).

In this case, the SAC is devoid of any allegation that Defendants are in the business of supplying information for the guidance of others. For this reason alone, the SAC fails to state a claim for negligent misrepresentation and must be dismissed. Nor could Plaintiffs credibly make such an allegation, because the SAC plainly establishes that the nature of any information provided by Defendants solely related to the mechanic services that were provided. The end result that Plaintiffs sought was the repair of the Peterbilt truck. Even assuming *arguendo* that Plaintiffs sought advice or information, that advice or information was incidental to Plaintiffs' end result—the repair of the truck. None of the advice or information sought or given in this case

relates to anything other than repair of the truck. Accordingly, Defendants were not in the "business of supplying information," and Plaintiffs' negligent misrepresentation claim fails.

## V. PLAINTIFFS CONSUMER FRAUD CLAIM FAILS.

A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169 (2005). In *Avery*, the Illinois Supreme Court rejected efforts by the plaintiff to enforce contractual promises through a consumer fraud action, holding that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Id.* Quoting *Zankle v. Queen Landscaping*, 311 Ill. App. 3d 308, 312 (2d Dist. 2000), the Illinois Supreme Court explained:

> "What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. [citation omitted] We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract."

*Avery*, 216 Ill. 2d at 169; *Zankle*, 311 Ill. App. 3d at 312; *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 704 (1st Dist. 2005); *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 799-800 (1st Dist. 2006).

This principle has been consistently applied by Illinois courts in myriad circumstances. For instance, the *Avery* court relied on this principle in holding that the failure to fulfill promises contained in State Farm's insurance policies could not form the basis for a consumer fraud action. *Avery*, 216 Ill. 2d at 169-170. Accordingly, the court held as a matter of law that the consumer fraud claim in *Avery* could not be based on the assertion that State Farm breached its promise to restore the vehicles to their pre-loss conditions, nor could it rest on the promise to

repair vehicles using parts of "like kind and quality," both of which claims were based on policy language. *Id.* The *Avery* court therefore considered only the claims that were not based on the policy language in assessing the consumer fraud claim. Similarly, in *Zankle*, the court held that allegations that landscapers failed to fulfill the terms of the landscaping contract—including false representations as to when they would complete the project, that they would fertilize the lawn twice, and that they would utilize a rock picker to remove rocks—were actionable only as a breach of contract and could not support a consumer fraud claim. *Zankle*, 311 Ill. App. at 31-312; *see also Sklodowski*, 358 Ill. App. 3d at 704-705 (challenge to 14–day delay in refunding mortgage escrow could not be brought as a consumer fraud action, because it was based on the provision in the mortgage requiring "prompt" refund and was simply an allegation that Countrywide failed to fulfill its contractual obligation); *Kindernay v. Hillsboro Area Hospital*, 366 Ill. App. 3d 559, 575-576 (allegation that the defendant failed to properly administer the Department of Transportation drug test constituted a breach of contract claim and was not actionable under the Consumer Fraud Act).

Plaintiffs' Consumer Fraud claim similarly seeks to enforce unfulfilled contractual promises. Plaintiffs' claim is based on the promise made by the Defendants that the repairs to the Peterbilt truck would be completed by the end of November 2020. *See* SAC, ¶ 249. The only other allegation of purportedly deceptive conduct contained within the Consumer Fraud count consists of Plaintiffs' claim that Defendants told them in January 2021 that the Peterbilt truck "was repaired." *See* SAC, ¶ 259. The "deceptions" that Plaintiffs claim occurred, however, are nothing more than the Defendants' purported failure to fulfill their contractual promises to repair the Peterbilt truck by a date certain. At best, these promises are express contractual promises that were unfulfilled, and are properly maintained as a breach of contract

action. Plaintiffs' Consumer Fraud claim relies exclusively on the parties' express agreement regarding the repairs to the Peterbilt truck, and therefore is based entirely on the breach of that contract. Plaintiffs' failure to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise is fatal to their claim. *See Greenberger v. GEICO Gen. Ins. Co., 631 F. 3d 392, 400* (7th Cir. 2011) (a valid ICFA claim requires a plaintiff to allege "unfair or deceptive conduct [that is] distinct from the alleged breach of a contractual promise"); *see also Avery*, 216 Ill. 2d at 169 ("A breach of contractual promise, without more, is not actionable under the ICFA."); *Zankle,* 311 Ill. App. 3d at 313 ("[B]ecause a naked breach-of-contract claim does not support a claim [under the ICFA], plaintiff could not make his *prima facie* case simply by adducing evidence that defendants did not do what they promised.") As a result, the Consumer Fraud claim fails and must be dismissed.

## CONCLUSION

WHEREFORE, Defendants GAC STAR QUALITY, INC. and GRIGORE CECATI respectfully request that this Honorable Court dismiss the Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for such other and further relief as the Court deems equitable and just.

Respectfully submitted,
GAC STAR QUALITY, INC.
and GRIGORE CECATI

By: /s/ Telly Stefaneas
                One of Their Attorneys

Telly Stefaneas, Esq.
53 West Jackson Boulevard
Suite 1215
Chicago, Illinois 60604
(312) 675-0075
Attorney No. 6243953
telly_stefaneas@me.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, was served on October 20, 2022, in accordance with Fed. R. Civ. P. 5, L.R. 5.5 and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/Telly Stefaneas

Telly Stefaneas, Esq.
53 West Jackson Boulevard
Suite 1215
Chicago, Illinois 60604
(312) 675-0075
Attorney No. 6243953
telly_stefaneas@me.com